FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 31, 2019

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES O.,[1]<br>     Plaintiff,<br><br>  vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br>     Defendant. | No. 1:19-cv-03118-MKD<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

1    The Commissioner has established a five-step sequential analysis to

2    determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

3    416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

4    activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

5    gainful activity," the Commissioner must find that the claimant is not disabled.  20

6    C.F.R. § 416.920(b).

7    If the claimant is not engaged in substantial gainful activity, the analysis

8    proceeds to step two.  At this step, the Commissioner considers the severity of the

9    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

10   "any impairment or combination of impairments which significantly limits [his or

11   her] physical or mental ability to do basic work activities," the analysis proceeds to

12   step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

13   this severity threshold, however, the Commissioner must find that the claimant is

14   not disabled.  20 C.F.R. § 416.920(c).

15   At step three, the Commissioner compares the claimant's impairment to

16   severe impairments recognized by the Commissioner to be so severe as to preclude

17   a person from engaging in substantial gainful activity.  20 C.F.R. §

18   416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

19   enumerated impairments, the Commissioner must find the claimant disabled and

20   award benefits.  20 C.F.R. § 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On April 14, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 1, 2015. Tr. 230-37. The application was denied initially, and on reconsideration. Tr. 97-105; Tr. 110-20. Plaintiff appeared before an administrative law judge (ALJ) on May 15, 2018. Tr. 36-65. On June 20, 2018, the ALJ denied Plaintiff's claim. Tr. 12-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 14, 2015. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus with associated diabetes nephropathy. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

ORDER - 6

impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift and carry 20 lbs. occasionally and 10 lbs. frequently, and can sit, stand and walk with no restriction. He can do no climbing of ladders, ropes or scaffolds. He can frequently climb stairs and ramps. He can do no working at exposed heights, no working heavy equipment, and otherwise he can have occasional exposure to hazards. He can have occasional exposure to extreme cold or to extreme heat.

Tr. 19.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cashier, counter clerk, and small products assembler. Tr. 25. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision. *Id.*

On April 1, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-three analysis; and

3. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 14 at 2.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the opinions of Dr. Gary Treece, Mr. Benjamin Rodriguez, PA-C, and Mr. Joseph Mason, PA-C. ECF No. 14 at 7-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014)(alteration in original); *see* 20 C.F.R. § 416.913(a), (e); SSR 06-03p

ORDER - 9

(Acceptable medical sources include, for example, licensed physicians and psychologists, while other nonspecified medical providers are considered "other sources.").[3]  However, an ALJ is required to consider evidence from non-acceptable medical sources.  20 C.F.R. § 416.913(d).[4]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Treece and Mr. Rodriguez

Dr. Treece and Mr. Rodriguez provided a joint opinion on Plaintiff's functioning on March 28, 2016.  Tr. 594-95.  They opined Plaintiff needs to lie down during the day for one to one and a half hours, and opined Plaintiff would miss four or more days in a month if he were to try to work full-time.  *Id.*  They also opined that Plaintiff working would cause his condition to deteriorate.  *Id.*  The ALJ gave the opinion "some weight."  Tr. 22.  As the opinion was signed by

---

[3] The definition of acceptable medical sources was modified for claims filed after March 27, 2017.  20 C.F.R. § 416.902.  The Court applies the regulation in effect at the time of Plaintiff's filing.

[4] The regulation that requires an ALJ consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 416.927(f) for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time of Plaintiff's filing.

an acceptable medical source, but was contradicted, the ALJ was required to give specific and legitimate reasons to reject the opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ reasoned Plaintiff's activities of daily living were inconsistent with the opinion. Tr. 22. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). However, an ALJ must make specific findings before relying on childcare as an activity inconsistent with disabling limitations. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). Here, the ALJ found that Plaintiff does some dog walking, provides daily transportation for his daughter to school, independently attends his own appointments, is able to drive and use public transportation, and grocery shops a couple times per month. Tr. 22 (citing Tr. 56, 57, 292, 303). The ALJ reasoned these activities were more consistent with an ability to perform light work than with the limitations indicated in the providers' opinion. Tr. 22.

Plaintiff argues the cited activities are not inconsistent with Plaintiff's reports and the activities are not indicative of an ability to perform full-time work. ECF No. 14 at 10-11. Plaintiff testified he spends a lot of time laying or sitting down but when he does get up, he sometimes takes his daughter's dog for a walk

but stated "we don't get real far." Tr. 56-57. Plaintiff reported driving his daughter to and from school, but there is no further information regarding how long the drive is or any additional care he provides for her. Tr. 292. He also reported attending doctor's appointments every couple of weeks. *Id*. Plaintiff's mother stated Plaintiff spends most of his time sleeping or laying down and he has difficulty with personal care due to fatigue. Tr. 300-01. She stated he does chores every couple of months, Tr. 302, and he drives only when needed, Tr. 303. She stated it takes him "a long time" to get his shopping done when he goes on a shopping trip a couple times per month. *Id*. Plaintiff's mother helps care for Plaintiff's child, and reported she makes the meals and handles the household cleaning, while Plaintiff does things like watches to make sure his daughter brushes her teeth. Tr. 301.

The ALJ did not identify any activities that are inconsistent with an inability to sustain full-time work or inconsistent with Plaintiff's allegations of disabling limitations. While the ALJ noted Plaintiff's ability to provide transportation for his daughter, there is no indication that Plaintiff provides any physical assistance to his daughter nor did the ALJ make any findings regarding the specific nature of the child care provided that is inconsistent with Plaintiff's allegations of disabling limitations. The noted daily activities were not sufficient to serve as a specific and legitimate reason to reject the opinion.

Second, the ALJ reasoned the limited number of visits with the providers lessened the weight owed to the opinion. Tr. 22. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c). The regulations direct that all opinions, including the opinions of examining providers, should be considered. 20 C.F.R. § 416.927(b), (c). The ALJ reasoned the records only demonstrated Plaintiff had seen the providers for a total of nine months at the time the opinion was written, as Dr. Treece saw Plaintiff in May 2015 and Mr. Rodriguez saw Plaintiff once in March 2016. Tr. 22 (citing Tr. 594). The ALJ noted there was no indication there were any appointments in between those dates, demonstrating limited treatment. Tr. 22. As an initial matter, the ALJ's conclusion is factually inaccurate. The questionnaire asked the providers for the first and last date they saw Plaintiff and did not ask the number of times they had seen him. Tr. 594. The underlying medical records indicate Plaintiff had a follow-up with Dr. Treece in September 2015. Tr. 565, 578. Mr. Rodriguez also saw Plaintiff in June 2015. Tr. 578. Plaintiff continued treatment with the providers after the opinion was rendered. Tr. 725. Thus, the ALJ's finding that each provider may have seen Plaintiff only once is not supported by the evidence. Moreover, the ALJ's reasoning that the opinion should be afforded less weight as the providers treated Plaintiff for only nine months before rendering the opinion is inconsistent with the ALJ affording

substantial weight to the opinions of Dr. Emma Billings and Dr. Jay Toews, who saw Plaintiff only once as examining sources. Tr. 22-23. This was not a specific and legitimate reason to reject the opinion.

Third, the ALJ reasoned the providers appeared to lack knowledge of Plaintiff's work history. Tr. 22. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). However, here, there is no indication in the record whether the providers were familiar with Plaintiff's work history. The providers' treatment records indicate Plaintiff was unemployed at the time they were treating him in 2015, Tr. 564, and later his occupation is listed as "disabled," Tr. 806, but there is no additional information about his work history in the providers' records.

Further, the ALJ's reasoning appears based on the belief that the providers were unaware of Plaintiff's lack of recent work history, even before the alleged onset date, and that if the providers were aware of Plaintiff's work history, it would have changed their opinion. This reasoning assumes Plaintiff's work history would impact the opinion. However, the providers cited to Plaintiff's A1C (a blood test regarding blood glucose, Tr. 571), need for five insulin injections per day, and physical symptoms that are accompanied by objective evidence including nephrotic levels of proteinuria, as evidence supporting the opinion. Tr. 494-95.

The ALJ does not explain how the Plaintiff's work history may impact the providers' opinion about Plaintiff's ability to function as of the date the opinion was rendered. This was not a specific and legitimate reason to reject the opinion.

As the ALJ did not articulate specific and legitimate reasons, supported by substantial evidence, to reject the opinions, the ALJ erred in his analysis.

*2. Mr. Mason*

In February 2015, Mr. Mason opined Plaintiff is unable to participate in work activities, due to his limitations. Tr. 497. He opined Plaintiff's diabetes requires constant monitoring, he has difficulty concentrating and recalling information, he can sleep for days at a time, his pain affects his ability to walk and stand for long periods, and he may have difficulty learning new job skills. *Id.* He also opined Plaintiff was limited to sedentary work. Tr. 499. The ALJ gave Mr. Mason's opinion little weight. Tr. 22. As Mr. Mason is not an acceptable medical source, the ALJ was required to give a germane reason to reject the opinion. *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Mr. Mason's opinion was inconsistent with the objective medical evidence. Tr. 22. An ALJ is not obliged to credit opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ found Mr. Mason's opinion was inconsistent with the

medical findings of Dr. Sloop, Dr. Licht and Dr. Hopp.  Tr. 22.  A few weeks after

Mr. Mason gave his opinion, Dr. Sloop found Plaintiff had only mild peripheral

neuropathy, and that Plaintiff had an "[e]xcellent, essentially complete recovery"

from his hospitalization.  Tr. 20-21 (citing Tr. 598).  Dr. Sloop observed Plaintiff

told exaggerated stories and had some bizarre ideas, but Plaintiff's neurologic

examination was "completely normal" besides the two points missed for recall at

five minutes.  Tr. 596-97.  In November 2016, Dr. Licht noted Plaintiff reported he

was doing well and denied any problems with his condition.  Tr. 20 (citing Tr.

703).  At the November 2016 appointment with Dr. Licht, Plaintiff's physical

examination was normal, though it is unclear if he was experiencing edema as the

note indicates there "is no 3+ edema."  Tr. 704.  In June 2017, Dr. Hopp found

Plaintiff's retinopathy was mild, and later records noted improvement in his vision.

Tr. 21 (citing Tr. 610-11).  As discussed above, while Plaintiff had periods of more

severe symptoms during periods of treatment noncompliance, he had significant

improvement when complying with treatment.  This was a germane reason to reject

Mr. Mason's opinion.

Second, the ALJ found Mr. Mason's opinion was inconsistent with

Plaintiff's activities of daily living.  Tr. 22.  An ALJ may discount a medical

source opinion to the extent it conflicts with the claimant's daily activities.

*Morgan*, 169 F.3d at 601-02.  As discussed *supra*, the ALJ's analysis of Plaintiff's

activities was flawed.  The ALJ did not add any further analysis of Plaintiff's

activities in assessing Mr. Mason's opinion.  Given the case is being remanded for

revaluation of the other opinions, the ALJ is directed to reevaluate all of the

medical evidence.

**B. Step Three**

Plaintiff contends that the ALJ erred by finding that Plaintiff's diabetes

mellitus with associated nephropathy did not meet Listing 6.06.  ECF No. 14 at 2.

At step three, the ALJ must determine if a claimant's impairments meet or equal a

listed impairment.  20 C.F.R. § 416.920(a)(4)(iii).  The Listing of Impairments

"describes each of the major body systems impairments [which are considered]

severe enough to prevent an individual from doing any gainful activity, regardless

of his or her age, education or work experience."  20 C.F.R. § 416.925.  "Listed

impairments are purposefully set at a high level of severity because 'the listings

were designed to operate as a presumption of disability that makes further inquiry

unnecessary.' "  *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing

*Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict

standards because they automatically end the five-step inquiry, before residual

functional capacity is even considered."  *Kennedy*, 758 F.3d at 1176.  If a claimant

meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. §

416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099. However, " '[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.' " *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a

ORDER - 18

subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listings 6.05, 9.00 and 2.02. Tr. 18. The ALJ did not consider Listing 6.06, the listing for nephrotic syndrome. To satisfy Listing 6.06, the claimant must satisfy both the Paragraph A and Paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 6.06. Paragraph A requires laboratory findings, documented on at least two occasions at least 90 days apart during a consecutive 12-month period, showing either: 1) Proteinuria of 10.0 g or greater per 24 hours; or 2) Serum albumin of 3.0 g/dL or less, and either: a) Proteinuria of 3.5 g or greater per 24 hours; or b) Urine total-protein-to-creatinine ratio of 3.5 or greater. *Id.* Paragraph B requires anasarca persisting for at least 90 days despite prescribed treatment. *Id.*

Plaintiff contends he satisfied the criteria of Paragraph (A)(2)(a) and (b) of the listing because he had a serum albumin of 3.0 g/dL or less and proteinuria of 3.5 g or greater in February 2015 and November 2015, as well as serum albumin of 3.0 g/dL or less and a urine total-protein-to-creatinine ratio of 3.5 or greater in March 2016 and May 2016. ECF No. 14 at 5. Plaintiff argues he meets the

Paragraph B criteria of the listing due to ongoing edema beginning in January 2015. *Id.* at 6.

Defendant argues Plaintiff has not met the burden of demonstrating he meets the requirements of Listing 6.06. ECF No. 15 at 3-5. While Defendant does not challenge the assertion that Plaintiff meets the Paragraph A criteria, Defendant argues Plaintiff's edema does not rise to the level of anasarca, thus not satisfying the Paragraph B criteria. *Id.* Though the ALJ did not address Listing 6.06, Defendant argues the ALJ's analysis of Listing 6.05 was sufficient to also act as an analysis for Listing 6.06. *Id.* at 5.

Here, the record is not clear as to whether Plaintiff satisfies the Paragraph B criteria of the listing. It is the ALJ's role to consider the evidence, state an interpretation thereof, and make findings accordingly. *Tommasetti*, 533 F.3d at 1041. As the case is being remanded on other grounds, on remand, the ALJ is instructed to reconsider the relevant listings, including Listing 6.06, and to call a medical expert if necessary to address whether Plaintiff's conditions meet or equal a listing.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons to discredit his symptom claims. ECF No. 14 at 15-21. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding

subjective symptoms.[5]  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim,* 763 F.3d at 1163 (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the

_____

[5] At the time of the ALJ's decision, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).

ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr.  19.

First, the ALJ found the objective evidence is inconsistent with Plaintiff's allegations of severe mental impairments and disabling physical impairments.  Tr. 20-21.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929I(2).

The ALJ reasoned the objective evidence, demonstrating Plaintiff's average IQ, and normal mental status exams, did not support Plaintiff's allegations of severe mental impairment.  Tr. 20 (citing Tr. 754, 756).  Additionally, the objective evidence demonstrated Plaintiff had only mild neuropathy, Tr. 20 (citing Tr. 598), mild diabetic retinopathy with some improvement, Tr. 21 (citing Tr. 610-11), and while he alleges a stroke and anoxia, the records indicate the diagnosis was diabetes with hyperglycemia.  Tr. 20 (citing Tr. 437).  Plaintiff argues the ALJ's findings were not specific enough, ECF No. 14 at 20, however the ALJ cited to

objective evidence showing normal or only mildly abnormal findings for each of

Plaintiff's primary symptom complaints.  The ALJ's finding was supported by

substantial evidence.

Second, the ALJ found Plaintiff's activities were inconsistent with his

allegations.  Tr. 20.  The ALJ may consider a claimant's activities that undermine

reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial

part of the day engaged in pursuits involving the performance of exertional or non-

exertional functions, the ALJ may find these activities inconsistent with the

reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.

"While a claimant need not vegetate in a dark room in order to be eligible for

benefits, the ALJ may discount a claimant's symptom claims when the claimant

reports participation in everyday activities indicating capacities that are

transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  The ability to care for

others without help has been considered an activity that may undermine claims of

totally disabling pain.  *Rollins,* 261 F.3d at 857.  However, if the care activities are

to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the

record must identify the nature, scope, and duration of the care involved and this

care must be "hands on" rather than a "one-off" care activity.  *Trevizo*, 871 F.3d at

675-76.

As discussed *supra*, the ALJ's analysis of Plaintiff's activities was flawed. While the ALJ cited to activities as inconsistent with Plaintiff's allegations, a review of the record indicates the cited activities are not inconsistent. Nevertheless, this error is harmless where the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

Third, the ALJ found Plaintiff's non-compliance inconsistent with his allegations. Tr. 20-21. "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment." *Trevizo*, 871 F.3d at 679 (citations omitted). Failure to assert a reason for not following treatment "can cast doubt on the sincerity of the claimant's pain testimony." *Id*. The ALJ found Plaintiff did not comply with his provider's recommendations. Tr. 21. Plaintiff did not follow the

low-cholesterol and low-sugar diet needed to manage his diabetes and high LDL and triglyceride levels. *Id.* (citing Tr. 699). When Plaintiff's uncontrolled diabetes lead to a hospitalization, it was in the context of Plaintiff not taking his insulin, and his compliance with taking insulin has been noted as "erratic." Tr. 20 (citing Tr. 752); Tr. 437. While Plaintiff did not challenge this reason, the Court finds it is a clear and convincing reason, supported by substantial evidence, to reject plaintiff's claims. The records demonstrate Plaintiff did not follow providers' recommendations on multiple occasions. A provider noted Plaintiff's sleep apnea may be contributing to Plaintiff's edema, Tr. 706, but records indicate Plaintiff did not follow up to have a sleep study, Tr. 840, and he was not using a CPAP, Tr. 839. Plaintiff was also instructed to elevate his feet to help with his edema, but Plaintiff admitted to not elevating his feet. Tr. 564. Though a provider suggested medication to protect Plaintiff's kidneys, Plaintiff would not commit to taking medication. *Id.*

Fourth, the ALJ found Plaintiff's symptom embellishment undermined his claims. Tr. 21. Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. *See Matney ex rel. Matney*, 981 F.2d at 1020. Therefore, the tendency to exaggerate or engage in manipulative conduct during the process is a permissible reason to discount the credibility of the

claimant's reported symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found Dr. Sloop noted Plaintiff engaged in exaggeration of his symptoms/issues, and Dr. Sloop reasoned Plaintiff's reported stroke was unlikely given his essentially complete recovery. Tr. 21 (citing Tr. 597-98). Plaintiff argues that the exaggerations were unrelated to his allegations, as they related to issues prior to the alleged onset date, and argues his reported stroke and anoxic brain injury were potential diagnoses, though they were ruled out. ECF No. 14 at 18-19. However, Plaintiff alleges mental impairment due to a brain injury. Tr. 248. He described issues to Dr. Sloop that were "not genuine or possible to occur." Tr. 596. Despite the allegation of severe mental impairment, Plaintiff scored a 36 out of 38 points on his neurologic examination. Tr. 597. On this record, the ALJ reasonably concluded that Plaintiff exaggerated his symptoms. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

Fifth, the ALJ found Plaintiff's work history indicated Plaintiff did not work for reasons other than his disability. Tr. 21. When considering a claimant's contention that he cannot work because of his impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to his alleged disability. *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*, 268 F.3d 824,

828 (9th Cir. 2001) (sufficient reasons for disregarding subjective testimony include stopping work for nonmedical reasons and failure to seek care for allegedly disabling condition at the time claimant stopped work).

The ALJ found Plaintiff had no earnings for 10 of the 15 years prior to his alleged onset date, and the other five of the 15 years, he did not work at the substantial gainful activity level. Tr. 21. The ALJ noted Plaintiff had also reported staying home to watch his daughter. *Id.* The ALJ reasoned Plaintiff's choice of not working is not related to a disability. *Id.* This reason, along with the inconsistent objective evidence, Plaintiff's non-compliance with treatment, and symptom exaggeration, provided clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom claims.

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 14 at 14. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is

to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

As discussed above, Plaintiff has had periods of non-compliance with treatment. Tr. 437, 564. Further proceedings are necessary to resolve the conflicts in the evidence. On remand, the ALJ is instructed to reconsider the opinion and either incorporate the limitations into the RFC or give specific and legitimate reasons to reject the opinion.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 31, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 30